## CLARK *v.* THE JEFFERSONVILLE, ETC., RAILROAD COMPANY.

INJUNCTION.—To justify an injunction to restrain the commission of a trespass upon real property, it is not essential that the threatened injury should be "irreparable," but under the statute of this State, it is sufficient to show that the remedy at law is not as practical and efficient to the ends of justice and its prompt administration, as the remedy in equity; therefore, when, owing to the peculiar character of the property, the injury cannot be fully compensated in damages, an injunction will be granted.

PRACTICE.—*Motion to Strike Out Pleadings.*—The true test of the materiality of averments sought to be struck out is, to inquire whether such averments tend to constitute a cause of action or defence, and if they do, they are not irrelevant.

SAME.—A pleading is irrelevant which has no substantial relation to the controversy between the parties to the action.

SAME.—A frivolous answer is one which, assuming its contents to be true, presents no defence to the action.

SAME.—An answer which is so framed that it does not set up a valid defence, but which states facts that may, by being properly averred, constitute a defence, will not be struck out as sham, irrelevant, or frivolous, but a demurrer thereto may be sustained.

SAME.—Motions to strike out are not to be encouraged, unless it is manifest to the court that it would be to the prejudice of the party that has to answer or reply, to suffer the objectionable matter to remain.

From the Floyd Common Pleas.

*J. H. Stotsenburg*, for appellant.

*G. V. Howk, W. W. Tuley*, and *C. D. Howk*, for appellee.

BUSKIRK, J.—On the 30th day of November, 1870, the appellee commenced this action in the court of common pleas of Clark county, against the appellant and one Jacob L. Smyser. At the January term, 1871, of said court of common pleas, the defendant Smyser procured the transfer and removal of the cause, as against him, into the circuit court of the United States, for the district of Indiana, where it is still pending and undetermined.

Afterward, at the September term, 1871, of the said court of common pleas, the venue of the cause as against the appellant, by consent, was changed to the court of common pleas of Floyd county. In this latter court, such proceed-

ings were afterward had in this cause as resulted in the judgment in favor of the appellee, from which this appeal is now prosecuted.

The questions presented by the record of this cause, and the errors thereon assigned, for the consideration of this court, relate entirely to the sufficiency of the pleadings filed and the rulings of the court below thereon. For this reason these pleadings will be recited at length, omitting the venue and title of the court, and the signature of counsel. Appellee's complaint, with the omissions aforesaid, reads as follows: "The Jeffersonville, Madison, and Indianapolis Railroad Company complains of Jacob L. Smyser and Charles E. Clark, and says, that heretofore, to wit, on the —— day of ————, 1837, the Board of Internal Improvements of the said State of Indiana, under and by virtue of the provisions of an act of the General Assembly of said State, entitled 'An act to provide for a general system of internal improvements,' approved January 27th, 1836, entered upon, took possession of, and appropriated a strip of ground sixty (60) feet in width, leading from the present intersection of Mulberry street with Market street, in the now city of Jeffersonville, in said county, down to and through a part of the out-lots in the town of Clarksville, in said county, to the then town of New Albany, in Floyd county, Indiana; that thereupon, in the year last aforesaid, the said Board of Internal Improvements built and constructed over and along the said strip of ground a railroad or turnpike grade; that the said grade, so built and constructed as aforesaid, continued to be the property of the State of Indiana until the 5th day of February, 1851; that on the day last named, the General Assembly of said State, by an act then approved, for all judicial purposes a public act, entitled 'An act relative to the Clark County Central Plank Road Company,' relinquished all the rights and interests of the said State of Indiana, in and to the said grade, between the cities aforesaid, to the said plank road company, and immediately thereafter the said plank road company took possession of the said grade, and within three

years from the passage of said last named act, constructed a plank road thereon between the said points; that the said Clark County Central Plank Road Company continued to hold possession of the said grade between the points aforesaid from the date of the passage of said act until the 5th day of June, 1865; that on the day last named, the said plank road company, by her deed of that date, for a valuable consideration therein expressed, sold and conveyed to this plaintiff, by her then corporate name of the Jeffersonville Railroad Company, the whole of said grade between the points aforesaid, and put this plaintiff in the immediate possession thereof; and that, since the day last named, this plaintiff has maintained her possession of the whole of said grade, between the points aforesaid, and has built a railroad track over the most of said grade, and has intended, and still intends, to construct a railroad track over the residue of said grade, whenever the business and interests of the plaintiff may require it to be done.

"The part of said grade over which the plaintiff has not hitherto built and constructed a railroad track, but over which she has intended, and still intends, to build, construct, and extend her railroad track, whenever her business and interests require it to be done, is that part of said grade which lies between the south line of the sixty-six (66) foot street, immediately south of out-lot number twenty-seven, in said town of Clarksville, and the intersection of Mulberry street with Market street, in the city of Jeffersonville; and the said part of said grade has been at all times since the said 5th day of June, 1865, properly graded and macadamized, and ready for the superstructure of plaintiff's railroad track, whenever the plaintiff should determine to extend and build her said railroad track over and along the said part of said grade.

"And the plaintiff says that on the 12th day of November, 1870, and on divers other days between that day and the day of the commencement of this action, at said Clark county, the defendants, without leave, wrongfully entered upon the said

part of said grade, of which the plaintiff was then the owner as aforesaid, and wrongfully and without leave dug up, removed, and hauled away the earth and soil, and the macadamized rock and gravel thereon, of great value, to wit, of the value of five hundred dollars, for the distance of, to wit, one hundred (100) feet, along the line of said grade, for the entire width thereof, and to the depth of, to wit, three (3) feet below the level of the said part of said grade; by all of which said wrongful actings and doings of the defendants, the plaintiff was and is damaged to the amount of one thousand dollars, which remains unpaid.

" And the plaintiff says that the defendants are still, wrongfully and without leave, excavating, removing, and hauling away the earth, soil, macadamized rock, and gravel from the said part of said grade, as aforesaid, and will, if not restrained by the order of this honorable court, utterly and irreparably ruin and destroy the said part of said grade for the purposes for which the plaintiff wishes and intends to use it; and the plaintiff has reason to believe, and does verily believe, that the defendants will, if notified of this application for a restraining order, before such application can be heard, utterly ruin and destroy the said part of said grade, or a large portion thereof, for plaintiff's purposes.

" Wherefore the plaintiff demands judgment for one thousand dollars, the damages aforesaid, and that upon the final hearing of this action, the defendants, and each of them, and their agents, servants, and employees may be perpetually enjoined from excavating, removing, or hauling away the earth, soil, macadamized rock, or gravel from said part of said grade hereinbefore described; and in the meantime, and until this action can be fully heard and determined, that the defendants, and each of them, and their agents, servants, and employees may be restrained by the order of this honorable court from excavating, removing, or hauling away the earth, soil, macadamized rock, or gravel from the said part of said grade hereinbefore described; and that the plaintiff may have all other proper relief in the premises."

This complaint was duly verified, and an approved undertaking was therewith filed ; and thereupon the temporary restraining order prayed for in said complaint was duly granted.

Appellant demurred to this complaint, upon the ground " that the same does not state facts sufficient to constitute a cause of action." The demurrer was overruled, and appellant excepted.

Appellant then filed the following motion: "The said defendant, Charles E. Clark, moves the court, upon the face of the complaint herein, to dissolve the restraining order and temporary injunction herein, for the reasons :

" 1. That it appears that the trespass and injuries complained of are fugitive and temporary, and adequate compensation can be obtained therefor at law.

" 2. Because it is not anywhere shown that the threatened injury is an irreparable one.

" 3. For want of equity apparent on the face of the complaint."

This motion was overruled by the court below, and appellant excepted.

Appellant then filed his answer in a single paragraph to appellee's complaint, which answer reads as follows :

" The said Charles E. Clark, for answer to the plaintiff's complaint herein, says that it is true that the Board of Internal Improvement of Indiana, under the provisions of the act of January 27th, 1836, took possession of a strip of ground sixty feet in width, leading from the present intersection of Mulberry street with Market street, in the city of Jeffersonville, Indiana, down to and through a part of the out-lots of Clarksville to the city of New Albany, Indiana. It is also true that the said board built along the said strip a grade to be used for road purposes of some kind. It is also true that whatever interest the State of Indiana had in the said strip or grade, between the cities aforesaid, was relinquished to the Clark County Central Plank Road Company by virtue of an act of the General Assembly of Indiana, passed February 5th, 1851, being the same act

recited in the plaintiff's complaint, the said strip or grade having been abandoned for all purposes of travel for several years prior thereto. It is also true that within three years from the passage of said act, the said plank road company took and held possession of said grade for turnpike purposes until the 5th day of June, 1865; and that on said day the plank road company undertook to convey to the plaintiff, by its then corporate name of the Jeffersonville Railroad Company, the whole of said grade between the points aforesaid. It is also true that the plaintiff, after the said pretended conveyance, took possession of a part of said grade."

(Here begins the 18th line of the 2d page of the written answer.)

"But this defendant avers, and charges the fact to be, that the plaintiff never, at any time either before or since the commencement of this action, took possession of that part of said grade which lies between the south line of the sixty-six (66) feet street, immediately south of out-lot numbered twenty-seven (27), in the town of Clarksville, and the intersection of Mulberry street with Market street, in the city of Jeffersonville, being the same described in plaintiff's complaint, and has never at any time done any work or placed any material thereon, or used the same in any manner; neither has the said plaintiff held and kept possession of the said portion of the said grade, above described, either for railroad purposes or for any other purpose whatever. This defendant further says that it is true that said plaintiff has built a railroad track over the most of said grade; and defendant avers that ever since the month of June, A. D. 1865, said plaintiff has been using the same (except the part particularly above described) for railroad purposes, having put down iron rails thereon and causing cars and locomotives to be daily and almost hourly run upon the same from the city of New Albany aforesaid to the city of Louisville, Kentucky, and also from the said city of New Albany to the city of Jeffersonville; and defendant further avers that ever since said month of June, 1865, continuously to the commencement of this action,

and since, the said plaintiff, for the purposes of her said rail-road, has taken and held possession of, appropriated, and used a certain strip of ground or right of way connecting with said grade at a point near the south-eastern corner of said out-lot twenty-seven (27), of Clarksville, and north of the part of said grade above particularly described, thence over and along the sixty-six (66) feet street, in Clarksville, which lies directly south of lot twenty-nine, of said Clarksville, and thence along Sixth street of Jeffersonville to the depot and shops of said plaintiff in Jeffersonville; and the said plaintiff, for the purposes of her said railroad, ever since said date aforesaid, has taken and held possession of, appropriated, and used a certain other strip of ground or right of way connecting with said grade at a point still further north of the part of said grade above particularly described, thence over out-lots nineteen (19), twenty (20), and twenty-one (21) of the out-lots of Clarksville and along the ninety-nine (99) feet street of said Clarksville, lying south of said out-lots, and thence along Ninth street of Jeffersonville to the depot and shops of said plaintiff in Jeffersonville aforesaid. Defendant avers that both of said routes above described were voluntarily selected, located, and fixed by the plaintiff, and, for the six years last past, have been continuously used by her for the transportation of freight and passengers from New Albany to Jeffersonville, Indiana, and to Louisville, Kentucky, with returning trains from each city; and that neither of the said routes, so located and used by the plaintiff, in any manner touch or connect with, or intersect, or run upon, the part of the said old grade, particularly described in the complaint as lying south of the sixty-six (66) feet street of Clarksville; and he avers that his co-defendant, Jacob L. Smyser, was before and at the time of the supposed trespass and injuries complained of by the plaintiff, the owner in fee simple of that part of out-lots thirty-two (32) and thirty-three (33). of Clarksville aforesaid, which lies south of the sixty-six feet street aforesaid, and embracing therein all that part of said grade as to which said supposed trespasses are alleged to have been committed, and. has

been ever since such owner; and this defendant, under the employment and direction of said Smyser, as such owner, was, at the time of said supposed trespass, lawfully opening and constructing an avenue or street, for the use of the public, across his said out-lots to the said sixty-six (66) feet street, which is and was the identical and only supposed injury or trespass set out in plaintiff's complaint."

Appellee then filed its written motion to strike out, and set aside from the foregoing answer, a certain part thereof, as follows:

"The plaintiff moves the court to strike out, and set aside from the defendant's answer in this action, all that part of said answer, beginning with the words, 'But this defendant avers,' in the 18th line of the 2d page thereof, and ending with the words 'in plaintiff's complaint,' in the 11th line of the 5th page of said answer, for the following reasons, to wit:

"1. Because the said part of said answer is a mere argumentative denial, or denial by implication, of the averments of plaintiff's complaint.

"2. Because the facts stated in said part of said answer do not, of themselves nor in connection with the other matters stated in said answer, constitute any defence whatever to the plaintiff's action."

This motion was sustained by the court below, and the appellant excepted and filed his bill of exceptions. And the cause being then submitted to the court below, there was a finding in favor of the appellee. Appellant then moved the court for a new trial for irregularity in the proceedings of the court in overruling appellant's motion to dissolve the temporary restraining order, and in sustaining appellee's motion to strike out part of appellant's answer. This motion for a new trial was overruled by the court, and the appellant excepted, and the judgment rendered from which this appeal was taken.

Upon the record of this cause, the appellant has assigned the following errors:

1. In overruling appellant's demurrer.

2. In overruling appellant's motion to dissolve injunction.

3. In sustaining appellee's motion to strike out part of the answer.

4. In overruling appellant's motion for a new trial.

And first, as to the ruling of the court below upon appellant's demurrer to appellee's complaint, did the court err in overruling this demurrer?  The learned counsel of the appellant, in his very able and interesting brief, has wholly failed to discuss this alleged error, or to point out any defect in the complaint.   Indeed, he implies, though he does not say, that it is a good complaint in trespass *quare clausum fregit*, if it were only "divested of all the long introductory history."

We are of the opinion that the complaint is good.   The demurrer did not reach any irrelevant or redundant allegations.   Before demurring, the appellee should have moved to strike out all surplusage allegations.

The second error assigned is, that the court below erred in overruling the appellant's motion to dissolve the restraining order or temporary injunction.   The grounds of this motion were, that the injuries complained of were fugitive and temporary, and adequate compensation could be obtained therefor at law, and that it was not shown that the threatened injury was an irreparable one, and for want of equity apparent on the face of the complaint.

The counsel for appellant, in support of his motion to dissolve the restraining order, makes the following argument:

"The alleged trespass was the digging up, removing, and hauling away, from a certain strip of ground in Clark county, the earth, soil, gravel, and macadamized rock for the distance of one hundred feet along a width of sixty-six feet, to the depth of three feet.

" The statement of the injury in the complaint shows that it was not irreparable.   It could be fully compensated in damages.

"'Courts of equity interfere in cases of trespass to prevent irreparable mischief, or to suppress multiplicity of suits and oppressive litigation.   For, if the trespass be fugitive and temporary, and adequate compensation can be obtained in an

action at law, there is no ground to justify the interposition of courts of equity.' Story Eq. Jur., sec. 298; *Lewis* v. *Rough*, 26 Ind. 398.

"The case of *The Indianapolis Rolling Mill Co.* v. *The City of Indianapolis*, reported in 29 Ind. 245, resembles this.

"There, the plaintiff had built a railroad track from the mill, by the authority of the city, to the Union railroad track, and the complaint averred that the defendant had commenced obstructing the railroad track along Tennessee street by covering the same with gravel, and would, unless restrained, completely obstruct said track, so that it could not be used.

"The court said: 'The complaint shows no cause to justify the interposition of the extraordinary powers of the court by injunction. It charges Wren with a simple trespass, in throwing gravel on the appellant's railroad track, which, allowing it to be unjustifiable, could be fully compensated in damages. The gravel could be readily removed, or the track raised, and the injury, therefore, could not be irreparable.'

"In some respects, that was a stronger case for the plaintiff than this.

"Here, in the case at bar, the small space where the alleged trespass was committed could, for a slight expense, be put *in statu quo*. The rolling mill company was using its track at the very time of the trespass, while the appellee, to quote from the complaint, 'has intended and still intends to construct a railroad track over the residue of said grade, whenever the business and interests of the plaintiff may require it to be done.'

"It was, therefore, not even using the strip for any purpose.

"It might not use it for twenty years. It might never use it.

"There was then no valid cause for a restraining order and injunction, and appellant's motion, as specified in the second error assigned, ought to have been sustained."

Counsel for appellee argue as follows, upon the point under consideration:

"Before adverting to the positions assumed by appellant in discussing the alleged error, it may be well to notice briefly the nature and extent of the appellee's title to the strip of ground, described in appellee's complaint. By the action of the Board of Internal Improvements, in its appropriation of the said strip of ground, as set forth in said complaint, the fee simple of the premises so appropriated was vested in the State of Indiana. This conclusion, it is submitted, is directly supported by the decision of this honorable court in the late case of *The Water Works Company of Indianapolis* v. *Burkhart*, 41 Ind. 364. Over this strip of ground thus appropriated, the Board of Internal Improvements constructed, in 1837, a railroad or turnpike grade. This grade continued to be the property of the State until February 5th, 1851, at which time the General Assembly of said State, by an act then approved, relinquished all the rights and interests of the State of Indiana in and to said grade to the Clark County Central Plank Road Company. Local Laws 1851, p. 532. The said plank road company at once took possession of said grade and constructed a plank road thereon, and continued in possession thereof until June 5th, when, by its deed of that date, the said company sold and conveyed the said grade to the appellee. Since the day last named, the appellee has maintained possession of the whole of said grade. Under the foregoing chain of title, the appellee claimed to be the owner in fee simple of the said strip of ground, described in its complaint. This grade, at the time of the commencement of this suit, was more than thirty (30) years old, was macadamized, and was ready for the superstructure of appellee's railroad.

"The complaint charged that the appellant and his co-defendant, without leave and wrongfully, had entered upon the said grade, and dug up, removed, and hauled away the earth, soil, macadamized rock, and gravel thereon, and would utterly and irreparably ruin and destroy the said grade, if not restrained by order of the court.

"The injury complained of was the absolute destruction

of the grade for the purposes for which it was intended. It could not be compensated in damages, for the reason that money alone would not construct such a grade. This grade was more than thirty years old, and in the lapse of time had settled until it was as solid as the natural earth. The case presented by appellee's complaint differs very materially from the case of *The Indianapolis Rolling Mill Co.* v. *The City of Indianapolis*, 29 Ind. 245, quoted by appellant. In that case, the injury complained of occurred in a public street, and consisted simply in throwing loose gravel on the railroad track, which gravel, the court says, 'could be readily removed.' In the case now under consideration, the injury complained of occurred on the appellee's private property, and consisted in the absolute and total destruction of the appellee's property for the purposes for which it was intended. Money alone, as was said before, would not construct such a grade, nor put the appellee *in statu quo*. To add to the force of the case quoted, the appellant's counsel says in his brief, that 'the rolling mill company was using its track at the very time of the trespass.' This may be true, but it is not so stated in the opinion of the court; but the possibilities, if not the probabilities, are, that the learned counsel is testifying, for the purpose of giving point to his argument.

" The strip of ground belonged to the appellee. It was graded and ballasted, ready for the superstructure of appellee's railroad. Whether the appellee should use the said strip of ground then, or twenty years thereafter, was, bluntly speaking, none of the appellant's business. The non-user of the strip of ground by the appellee, however long it might be continued, certainly would not justify the appellant in absolute'y destroying it for the purposes for which it was intended. To prevent this destruction, the appellee rightfully invoked the aid of the strong right arm of the law, and the court below did right in granting the relief prayed for.

"The averments of appellee's complaint show that the property described in its complaint was of peculiar value to

the appellee, and could not admit of recompense, and would. be destroyed by repeated acts of trespass. In such a case,, Chancellor KENT has conceded that an injunction ought to be granted. *Jerome* v. *Ross*, 7 Johns. Ch. 334. This honorable court has approved of the doctrine 'that an injunction will now lie to prevent the commission of a mere trespass, where irreparable injury would be the result, and where the plaintiff would have no other adequate remedy.' *Bolster* v. *Catterlin*, 10 Ind. 117. The expression 'irreparable injury' is perhaps a stronger one, if allowed its full force, than the courts of this State are justified in using by our code of practice. The code provides that an injunction may. be granted 'where it appears by the complaint, that the plaintiff is entitled to the relief demanded, and the relief, or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which, during the litigation, would produce great injury to the plaintiff.' 2 G. & H. 132. The expression 'great injury' here used, in its ordinary import, certainly does not imply an irreparable injury. In this case, however, it is not very material which expression is used. The complaint shows that the property described therein was of peculiar value to the appellee, and that the commission and continuance of the acts complained of would not only produce great injury to the appellee, but would utterly and irreparably ruin and destroy the appellee's property. The excavating, removing, and hauling away of a railroad grade differs very materially from dumping a few loads of loose gravel on a railroad track. The former is the absolute destruction of property, while the latter is only a slight and temporary impediment to the use of property. The former is the case now before the court, while the latter is the case cited by appellant in 29 Ind. 245.

" It will be observed that the temporary restraining order was to continue in force ' until the Tuesday after the second Monday in January, 1871.' Appellant's motion to dissolve this restraining order was not filed until the 30th day of January, 1872. Did the court below err in overruling a motion to .

dissolve a restraining order, which, by its own limitation, had ceased to operate for more than one year? Certainly there is no error in such a ruling upon such a state of facts. But the appellee, waiving all technicalities, relies implicitly upon this position, that the facts stated in its complaint were amply sufficient to entitle the appellee to the relief prayed for, and therefore that the court below did not err in over-ruling appellant's motion to dissolve the restraining order."

This court, in *English* v. *Smock,* 34 Ind. 115, quoted with approval the following language from the opinion in the case of *Watson* v. *Sutherland,* 5 Wal. 74: "If the remedy at law is sufficient, equity cannot give relief, 'but it is not enough that there is a remedy at law; it must be plain and adequate, or in other words, as practical and efficient to the ends of justice, and its prompt administration, as the remedy in equity.' * * * To prevent a consequence like this, a court of equity steps in, arrests the proceedings *in limine,* brings the parties before it, hears their allegations and proofs, and decrees, either that the proceedings shall be unrestrained, or else perpetually enjoined. The absence of a plain and adequate remedy at law affords the only test of equity jurisdiction, and the application of this principle to a particular case must depend altogether upon the character of the case, as disclosed in the proceedings."

We are very clearly of opinion that the case made in the complaint brings it within the principle laid down in the above case. The remedy at law is not "as practical and efficient to the ends of justice, and its prompt administration, as the remedy in equity." Owing to the peculiar character of the property, the injury complained of could not be compensated in damages. The remedy at law, therefore, is not "plain and adequate." The court below committed no error in refusing to dissolve the restraining order.

The third error assigned is, that the court below erred in sustaining appellee's motion to strike out a part of appellant's answer. The motion was based upon two grounds:

1. That the portion of the answer sought to be stricken

out was a mere argumentative denial, or denial by implication, of the averments of the complaint.

2. That the facts stated in such portion of said answer did not, of themselves or in connection with the other matters stated in said answer, constitute any defence to appellee's action.

The answer is an anomalous production. It may be divided into three parts. In the first are certain modified and restricted admissions of the allegations of the complaint, but not full and explicit enough to dispense with proof of the allegations as made. In the second are certain denials of allegations in the complaint, but not full enough to amount to the general denial, and not specific enough to amount to a special or argumentative denial. In the third, it is alleged that Smyser was the owner in fee simple of the land, where it was alleged the trespass had been committed, and that the appellant, as the agent and employee of Smyser, had committed the acts complained of, for the purpose of making a public street.

The motion to strike out did not embrace the first part of the answer.

It is very obvious that it was not intended for a special or argumentative denial, but conceding that it was such, there being no general denial in, it should not have been stricken out. *City of Aurora* v. *Cobb*, 21 Ind. 492; *Holcraft* v. *King*, 25 Ind. 352.

It remains to inquire whether the third part of the answer constituted any defence. It was as follows:

"And he avers that his co-defendant, Jacob L. Smyser, was, before and at the time of the supposed trespass and injuries complained of by the plaintiff, the owner in fee simple of that part of out-lots thirty-two (32) and thirty-three (33), of Clarksville aforesaid, which lies south of the sixty-six feet street aforesaid, and embracing therein all that part of said grade, as to which said supposed trespasses are alleged to have been committed, and has been ever since such owner; and the defendant, under the employment of

said Smyser as such owner, was, at the time of said supposed trespass, lawfully opening and constructing an avenue or street, for the use of the public, across his said out-lots, to the said sixty-six feet street, which is and was the identical and only supposed trespass or injury set out in the plaintiff's complaint."

The answer was intended as a plea in confession and avoidance. It is claimed by counsel for appellant that it is the equivalent, in substance and technical language, of the old plea or avowry of *liberum tenementum* of a third party.

It is almost identical with the form given in 1 Archbold Nisi Prius, p. 330, and in Stephen Pl., Heard's ed., p. 314. In effect, it states that the *locus in quo* is the freehold of a third person, and that the appellant, as his servant and by his command, committed the trespass.

The question presented is, not whether the answer would be held good or bad on demurrer, but whether the court erred in striking it out on motion.

It was said by this court in *Port* v. *Williams*, 6 Ind. 219, that "a motion to strike out does not perform the office of a demurrer, either under the old or new practice. Whether it was a sufficient defence to bar the action, was wholly immaterial. It was, at least, such pertinent matter as the court ought not to strike out on motion. It was not so irrelevant as to warrant that; it was not a sham defence. We are therefore of opinion that the court erred in sustaining the motion to strike out."

The 77th section of our code was, in substance, borrowed from the New York code. Adjudications in that state, involving a construction of such section, are entitled to great weight, as the presumption is, that we adopted the section in view of its construction.

In *Seward* v. *Miller*, 6 How. Pr. 312, the court said: "A pleading is irrelevant which has no substantial relation to the controversy between the parties to the action."

In *Kurtz* v. *McGuire*, 5 Duer, 660, it was held that new matter which is palpably no defence, either total or

partial, nor a counter-claim, may be struck out as irrelevant.

It was held in *Fabricotti* v. *Launitz*, Code R., N. S. 121, that matter is irrelevant in a pleading which has no bearing on the subject-matter of the controversy, and cannot affect the decision of the court.

It has been held in several cases in that state, that the true test of the materiality of averments sought to be struck out is, to inquire whether such averments tend to constitute a cause of action or defence, and if they do, they are not irrelevant. *Ingersoll* v. *Ingersoll*, 1 Code R., 102; *Averill* v. *Taylor*, 5 How. Pr. 476; S. C., Code R. N. S. 213.

In *Struver* v. *The Ocean Insurance Co.*, 9 Abbott Pr. 23, the court say: "A sham answer is one that is false in fact; a pleading is irrelevant, which has no substantial relation to the controversy between the parties to the action; and a frivolous answer is one which, assuming its contents to be true, presents no defence to the action. An answer, however, which is so framed that it does not set up a valid defence, but which states facts that may, by being properly averred, constitute a defence, will not be struck out as sham, irrelevant, or frivolous, but it may be demurred to. *Alfred* v. *Watkins*, Code R., N. S. 343."

In our opinion, the answer under examination cannot be regarded either as sham, irrelevant, or frivolous. There is nothing showing that it is false in fact. It certainly has a substantial relation to the controversy between the parties to the action. Nor can we say that it presents no defence to the action. It may not be so framed as to present a valid defence, but it does state facts which tend to show that they would amount to a valid defence, if properly averred. When a demurrer is sustained to a pleading, the party has a right to amend, but when a pleading is stricken out, it cannot be amended, for it is out of the record. The party then must either reserve the question by a bill of exceptions and seek relief in this court, or obtain the leave of the court to file another pleading. For this reason, motions to strike out are not to be encouraged, unless it is manifest to the court

that it would be to the prejudice of the party that has to answer or reply, to suffer the objectionable matter to remain. *Molony* v. *Dows*, 15 How. Pr. 261.

.It has been, however, frequently decided by this court that where a demurrer has been sustained to a pleading which should have been stricken out on motion, and where a pleading has been stricken out which palpably contains no valid cause of action or defence, and where a demurrer would have been sustained, the right result having been accomplished, the judgment would not be reversed because of the irregular mode adopted.

But we do not think the case in judgment comes within the principle stated.

We are of opinion that the court erred in sustaining the motion to strike out, and for this error the judgment must be reversed.

The judgment is reversed, with costs; and the cause is remanded, with directions to the court below to overrule the motion to strike out, and for further proceedings in accordance with this opinion.